SCARBROUGH v. STATE.

(*Knoxville*, September Term, 1934.)

Opinion filed November 30, 1934.

BEN F. ALEXANDER, of Clinton, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. JUSTICE COOK delivered the opinion of the Court.

Plaintiff in error Scarbrough, W. P. Arms, and Sam Cates were indicted for killing Everett Johnson in Anderson county on the night of 'June 17, 1931. They went to a camp on the river where Johnson had gone fishing to arrest him upon information that he was in possession of a stolen automobile. Johnson was shot while in flight and the indictment followed. The charge against Cates was dismissed upon *nolle prosequi*. After two mistrials, the jury acquitted Arms, but convicted Scarbrough of involuntary manslaughter with imprisonment for a year. Scarbrough appealed and insists that the evidence preponderates against the verdict and that the verdict is contrary to the law applied to the facts.

Scarbrough was a constable and Arms a deputy sheriff of Morgan county. Both resided at Petros. Johnson, who came from Danville, Kentucky, had been at Petros four or five weeks and within that period was seen using two cars, a Chevrolet and a Chrysler, from both of which Kentucky numbers were removed and Tennessee numbers substituted.

Some time during the day of June 17, Arms was informed that Johnson was in possession of a stolen automobile for which there was a reward of $25. About 7 o'clock p. m., Arms informed Scarbrough of what he had heard and told him to get ready to go after Johnson. It is proper to add here that subsequent developments disclosed the fact that the Chrysler car was stolen from Cash Pence, a resident of Kentucky.

In the forenoon Johnson, driving the Chrysler, went to the fishing camp on the Clinch river in Anderson county with Zeke Dexter and Allen McGhee. In the afternoon Johnson brought McGhee back to Petros and returned to the camp, reaching there about 9 o'clock, to join Dexter for a night's fishing with a trot line. After looking at the lines, Dexter and Johnson stopped awhile at the camp of Fred Beets, Earl Beets, and Earl Wilson, situated about twenty yards from where Dexter and Johnson were camping beside their cars. Somewhere near 10 o'clock they left the Beets camp with the statement that they were going to sleep at their cars. Within about thirty minutes Deputy Sheriff Arms and his party came. They left Petros about 8 o'clock, soon after Johnson left, and traced him to the camp. They had no writ for his arrest, but acted upon the information given Arms that Johnson was in possession of a stolen car. When they attempted to arrest Johnson, he ran down a path that led in the general direction of the Beets campfire, but passed it about nine feet to one side. The Beets boys and Wilson were sitting by their campfire when Arms, Scarbrough, and Cates came to Johnson's car. They heard talking but saw no struggle. They saw Johnson run down the path toward their camp, saw the men pursuing, heard them crying halt, and heard pistol shots, and as Johnson ran past they heard the last shot and heard his body strike the ground out in the dark a short distance beyond their camp.

When the firing began the Beets boys and Wilson got behind a tree. They testified that as Johnson ran five or six shots were fired. Fred Beets heard bullets whizzing by. Earl Beets saw flashes, that is shots upward, and

spots, that is horizontal shots, as Johnson came running toward them. Earl Wilson said there were four or five rapid shots, a pause, then a single shot. The evidence shows that it was the last shot fired that killed Johnson.

These witnesses say their camp fire and a lantern exposed Johnson while in flight near their camp. They also say that the man pursuing him had a flash-light. Scarbrough was nearest Johnson in the chase and fired the last shot as he ran past the Beets camp fire. Johnson was killed by a shot in the back of the head, which caused instant death. He fell seventy-five feet from the Beets camp. Cates did not leave the place from which Johnson ran. Arms followed only a short distance. Scarbrough, about seventy-five feet behind Johnson, was chasing him when the last shot was fired. When Johnson fell, Scarbrough went to him, saw that he was dead, and returned to the Beets camp, where he made the statement that he did not intend to kill Johnson.

According to Arms and Scarbrough, Johnson was lying apparently asleep. When they took hold of him and lifted him from the ground with the statement that he was under arrest, he wrenched loose and ran, and what they did was for the purpose of arresting his flight. Scarbrough testified that all his shots were upward but at the last shot he stumbled.

It is insisted that the pursuit and firing in the air was lawful and that if a shot from Scarbrough's pistol caused death it was accidentally inflicted when Scarbrough stumbled. There is no evidence showing the general situation. It is not shown whether the natural surroundings would have made it possible to easily capture Johnson after his flight. It cannot be determined from the evi-

dence whether Johnson, suddenly aroused from sleep, was running to the Beets camp for protection or was in flight from the officers. There is no evidence upon the question of whether or not the firing of pistols was reasonably necessary. The testimony of the Beets boys and Wilson authorize the inference that shots were fired directly at Johnson after he commenced running toward the camp.

██ ██ In arresting for felony, a peace officer or even a private person, acting without a warrant, may, if necessary, kill a felon after he resists or flees, so that he cannot otherwise be taken; but the law does not clothe an officer or private person with authority to arbitrarily judge the necessity of killing, and such a course must be the last resort; and whether or not there was a necessity for killing, and the reasonableness of the grounds upon which the officer or the private person acted, are questions of fact for the jury. 5 C. J., 425; 2 R. C. L., 471; Bishop's Criminal Law, vol. 2, p. 367; Wharton's Criminal Law, vol. 2, sec. 405, p. 408; *Taylor* v. *State*, 157 Tenn., 426, 7 S. W. (2d), 50.

*Reneau* v. *State*, 2 Lea, 720, 31 Am. Rep., 626, and *Love* v. *Bass*, 145 Tenn., 525, 238 S. W., 94, declare the rule to be observed in a civilized state, that is to say, that neither an officer nor a private person can slay to arrest the nonresisting flight of a felon if he can be otherwise taken. Killing in flight is excusable only when it is shown that the felon canot be ultimately taken by less drastic means, and that presents a question for determination by the jury.

██ The jury found that plaintiff in error acted unreasonably in attempting to arrest Johnson's flight. We

have examined the record with great care and find that the evidence authorized the jury to infer that shots were unnecessarily and recklessly fired at Johnson, not while he was resisting arrest, but was in flight toward Beets' camp fire.

Affirmed.