CATHEY *v.* STATE.

(*Nashville,* December Term, 1950.)

Opinion filed January 13, 1951.

James R. Brown, of Centerville, for plaintiff in error.

Knox Bigham, Asst. Atty. Gen., for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

This appeal by J. D. Cathey is from a conviction of second degree murder with maximum punishment fixed at confinement in the penitentiary for ten years and one day. The indictment alleges that Eugene Townsend is the name of the person who was killed.

One assignment of error is that the State has failed to establish the corpus delicti. The proof shows without contradiction that Cathey shot the man for whose homicide he was put on trial in this case under the indictment mentioned and that this man died at the

hospital to which he was taken. There is no evidence that he was suffering from any illness at the time he was shot. His activities on that day indicate the contrary. He was shot twice at close range with a shotgun inflicting wounds so serious as to necessitate the giving of a blood transfusion while being taken from the scene of the shooting to the hospital. "Death may be presumed to have been caused by apparent wounds, particularly when there is no suggestion in the record that the deceased died from any other cause than that relied on by the State". *Franklin* v. *State,* 180 Tenn. 41, 44, 171 S. W. (2d) 281, 282. If, therefore, the wounds were feloniously inflicted, as found by the jury (a question hereafter discussed), then the corpus delicti is fully established. *Foster* v. *State,* 180 Tenn. 164, 172 S. W. (2d) 1003.

The man who was shot by Cathey was a total stranger, insofar as this record shows, in the community and county in which he was shot and had never been seen there by anyone, including Cathey, prior to the night preceding the afternoon he was shot. No one purported to know his name. For this reason, it is insisted that the State has failed to prove that the person shot by plaintiff in error is Eugene Townsend, the name mentioned in the indictment.

The proof shows that the deceased spent the night preceding the afternoon he was shot at the home of Cathey, who, in turn, made his home with his parents. The then sheriff of Hickman County exhibited to the jury a man's coat. He was allowed to testify over the objection of Cathey that Cathey's father brought this coat to him after the shooting with the statement that it belonged to the deceased, and that he, the father, had found it at his,

the father's, home. The sheriff then exhibited certain papers which he said he took from the coat. Included among these papers was a registration card issued by a Texas Board and bearing the name of Eugene Townsend. In the course of the testimony of plaintiff in error, Cathey, this coat was exhibited to him, and he testified that it was brought to his house by the man whom he shot the next day.

The testimony of the sheriff that this coat was delivered to him by the person who was the father of plaintiff in error, and that he took from this coat the papers mentioned is testimony as to facts within the purported knowledge of the sheriff; hence, competent. His testimony as to what the father told him is hearsay; therefore, incompetent. But this becomes entirely immaterial since the plaintiff in error testifies that the deceased did bring this coat to his home at the time mentioned.

The record, therefore, establishes it as an undisputed fact that the man whom Cathey killed, and for whose killing he was being tried in this case, had in his coat pocket a registration card bearing the name of Eugene Townsend, the name mentioned in the indictment, that registration card being issued by a Texas Board. The question is whether these facts, there being no evidence to the contrary, are sufficient to support the verdict of guilty on an indictment which charged that the man he killed was named Eugene Townsend. The insistence that this evidence is insufficient is not upon the ground that there is a variance, but simply that the proof fails to show that the deceased bore that name. There is no suggestion that he bore any other name, or that his name was not Eugene Townsend. Compare *Joyce* v. *State,* 32 Tenn. 667-668.

■ While we have not been able to find any case in our reports deciding this point on similar facts, it does seem on principle that the undisputed evidence mentioned is sufficient to support the conclusion that the man killed was named Eugene Townsend. The registration card in his possession is clearly some material evidence to that effect and, therefore, proper for submission to the jury. There being no evidence to the contrary, and no insistence that he had any other name, this seems sufficient. We so hold. Compare 27 American Jurisprudence, page 377, section 327, and the cases there cited.

This brings consideration of this case to the question of whether the evidence sufficiently supports the verdict.

A few weeks prior to this tragedy the plaintiff in error went to Dickson, Tennessee, with Ersie Davidson, his closest friend, and on that day Davidson was murdered by a stranger named McWilliams, who escaped. Cathey was very much interested in the capture of this man and says that he was furnished what was said to be a picture of McWilliams.

A short while thereafter, according to Cathey's testimony, a man by the name of Wallace McGee, who does not testify, came to the home of Cathey about midnight of February 14, 1947 bringing Townsend with him. The purpose of the visit, according to Cathey, was to procure work for this man whom neither he nor McGee knew. Cathey agreed to put this stranger to the job of cutting wood the next morning, he says, and permitted this stranger to spend the night and sleep in the bed with him, Cathey. It does not appear that he ever again thought about the wood cutting.

The conduct of this stranger during the night aroused Cathey's apprehension, he says. Nevertheless, after

breakfast Cathey permitted him to obtain possession of a rifle that was in the house. After the rifle was twice fired by the stranger at targets Cathey says he became more afraid of the man and told him that there were no more rifle shells. Subsequently, the two men started to the home of a man who was also named McGee and on the way stopped by a still, the location of which was known to Cathey. They finally returned home and then started to a store. The stranger was permitted to again obtain possession of the rifle and a number of rifle shells and carried this rifle with him on that trip. Cathey carried a shotgun.

According to Cathey, while they were on their way to the store this stranger informed him that he, the stranger, was a bad man with a police record, and that his name was McWilliams, and that he was the man who had killed Ersie Davidson, who was Cathey's closest friend. They went on to the store and then, at the suggestion of the stranger, they went to the home of a woman whom the stranger said he wanted to see. Cathey joined in taking one or more drinks of whiskey with Townsend. They did not find the woman for whom Townsend was allegedly looking, but when they reached the house in which Davidson's widow lived Townsend went to the house. Mrs. Davidson was not there. Then, the two men started back home.

During this return trip Cathey procured possession of the rifle, and the two proceeded down the road with Cathey in possession of both guns. There passed two automobiles occupied by men with whom Cathey was acquainted. Cathey informed these men that this stranger was the person who had killed Davidson and requested them to call the officers. They agreed to do this after they took their families home. One of these men did

return shortly thereafter, but in the meantime Cathey had inflicted upon Townsend the gunshot wounds from which he subsequently died.

Cathey says that after the departure of the two men whose aid he had solicited, he was told by this stranger that he, the stranger, did not intend to stay there and be captured by officers. Thereupon, Cathey says that he forced the stranger to lie down and that when this stranger started to get up and attack him he fired the shotgun. The stranger was wounded and temporarily subdued. Nevertheless, according to Cathey, Townsend again attempted to get up and attack him while he was reloading this single barrel shotgun and while Townsend was making a move towards his body as if to draw a pistol. He was not in fact armed. Cathey says, however, that he succeeded in reloading the gun and firing the second shot which likewise took effect and completely subdued Townsend.

Both shots seem to have struck the stranger in the face. One shot entered the stranger's right eye and came out in his left jaw. It is thereby indicated that Cathey's gun was pointed downward at the time he shot. The other shot took effect in the left side of the man's face.

Soon a crowd assembled. Cathey told one of these persons that this man "started to get up coming towards him and he shot him"; that he "called the man" an insulting name "and told him to lay down". He told another person that "the man tried to get away and he shot him". He told still another that he shot him "because he was scared of him—that he was coming on to him and he shot him". Again, when asked as to why he shot this man he replied "I know something you don't know". To another he said "I got me a man while

ago, I shot him twice and ought to have shot him again''. Cathey further said to some one there ''We don't have to worry about Ersie (meaning his murdered friend) Davidson, any more he (referring to Townsend) is going through the same thing Ersie did''.

It is appropriate here to note that the McWilliams who killed Ersie Davidson was later apprehended, tried and convicted. There is no claim that this stranger was in fact McWilliams.

Cathey's insistence is that he acted only in the necessary defense of himself in shooting Townsend. Running through his brief is also the suggestion that it became necessary to shoot Townsend in the course of attempting to arrest him for a felony which Cathey thought Townsend had committed.

■■ Of course, the benefit of the law of self-defense was not available to Cathey in the absence of a genuine and well founded fear that he was in danger of death or great bodily harm. *Rippy* v. *State,* 39 Tenn. 217, 220. Nor was he authorized to shoot Townsend in the course of arresting him for a supposed felony unless such a course became absolutely necessary. *Scarbrough* v. *State,* 168 Tenn. 106, 110, 76 S. W. (2d) 106. Whether or not he was justified in either event for shooting Townsend was a question of fact to be determined by the jury. This Court is not authorized to disturb the jury's conclusion, unless it can see that the evidence preponderates against that verdict.

■ On the face of this record it is clear that Cathey believed Townsend to be the man who had killed his best friend. The verdict indicates that the jury's conclusion was that Cathey shot Townsend to revenge this friend's death. The evidence seems to justify that conclusion.

Very shortly after the transaction Cathey said "I shot him twice and ought to have shot him again", and "we don't have to worry about Ersie any more. He is going through the same thing Ersie did". Moreover, by Cathey's testimony there is related a transaction that is fantastic from its inception to its tragic end. This, and all the other circumstances disclosed, together with incriminating statements made by Cathey, require a conclusion that the evidence does not preponderate against the action of the jury in rejecting Cathey's plea of self-defense.

Affirmed.

All concur.