Sam Hawkins

*v.*

State of Tennessee.

378 S. W. 2d 777

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

ARNOLD M. WEISS, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

Plaintiff in error, Sam Hawkins, herein referred to as the defendant, was convicted of an assault with an intent to commit voluntary manslaughter (T.C.A. sec. 39-603) and of the additional offense of carrying a pistol with an intent to go armed (T.C.A. sec. 39-4901). For his first

conviction he was sentenced to 11 months and 29 days in the Shelby County workhouse, and for the second, to six months in the same institution and a fine of $50.00. The trial judge ordered the sentences to run concurrently and judgment was entered accordingly.

Defendant brought the case to this Court by an appeal in the nature of a writ of error and has assigned errors challenging the sufficiency of the evidence to sustain the conviction and seeking a reversal and new trial upon other grounds.

It is undisputed that about 9:15 o'clock on the night of August 31, 1962, the defendant, a crippled Negro man 81 years of age, shot and wounded Floyd Calloway, another Negro who was 29 years old; that the shooting occurred on the porch of a boarding house operated by the defendant's sister, Mary Simmons; and that Calloway, although hospitalized with a bullet wound in the stomach, survived the shooting.

It is also undisputed that prior to the shooting, Floyd Calloway, the prosecuting witness, had been living at Mrs. Simmon's boarding house for about two months; that a few weeks after he started living there, the defendant moved in with his sister; and that about two weeks before the defendant shot Calloway the two of them had gotten into an argument concerning a bicycle that Calloway had left in the hall.

There is, however, considerable dispute in the evidence as to what happened on the night of the shooting. Calloway testified for the State that on the night in question he arrived at the boarding house about 6:30 P.M. and went to his room to dress for an evening out with some friends who were to pick him up about 9:30. According

to his testimony, about 9 P.M., as he came down the stairs, he met the defendant who vociferously objected to a cat which Calloway had been keeping in his room. An argument ensued and continued as they went out on the porch where the defendant's sister was sitting.

Defendant's sister, according to further evidence of the State, told the defendant that she had given Calloway permission to keep the cat in his room, and with that, the defendant went back into the house. In a few minutes he returned to the screen door and called out, "Slim". Just as Calloway, who had been facing the street, turned around, the defendant shot him in the stomach and he fell off the porch onto the walk leading to the house.

Calloway testified that he had argued with the defendant, but had made no threats or threatening gestures and insisted that he had no weapon of any kind in his hand or on his person as was claimed by the defendant.

Police Officer James M. Willis testified that he investigated the incident and when he arrived Calloway was lying on the sidewalk some several feet from the screen door from which the shot was fired. He also said that he searched the victim and the vicinity and found no weapons of any kind other than the pistol used by the defendant.

Defendant took the stand in his own behalf and testified that he and his sister were sitting on the porch talking when Calloway came downstairs and asked about some food for his cat. An argument ensued about the keeping of the cat, and, according to his testimony, Calloway was using a lot of profanity and abusive language as well as making threatening gestures. Defendant said that he became afraid for his life and that of his

sister, and went into the house to get a gun for protection.

According to his further testimony, when he returned to the screen door, Calloway told him that he was "getting tired of me and he was going to show me something right there and reached out for me." Calloway immediately reached for him with his left hand, and pulled his right hand out of his pocket. The defendant said that he became frightened and shot. His sister, Mrs. Simmons, the only other eyewitness, substantially corroborated her brother's testimony.

■ ■ It is the defendant's contention that the evidence preponderates against the verdict of guilt and in favor of his innocence of both convictions. He contends that the shooting was in self-defense; that Calloway was cursing and threatening them; that he became frightened for his life and got the gun; and that when Calloway reached for him and put his hand in his pocket, he shot him in self-defense under the apprehension that he had a weapon concealed in his clothes.

The defendant also contends that his conviction for carrying a pistol cannot stand because the evidence preponderates in favor of the fact that he did not intend to go armed.

■ ■ We do not think either assignment can be sustained. To avail one's self of the benefit of the defense of self-defense, it is well recognized that the defendant must have been under a well-founded fear he was in danger of death or great bodily harm. (*Cathey v. State*, 191 Tenn. 617, 235 S.W.2d 601 (1950); *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327 (1962)); and this is ordi-

narily a question for the jury. *Beadle v. State,* 203 Tenn. 97, 310 S.W.2d 157 (1958).

██ ██ Moreover, the verdict, which was approved by the trial judge, took into consideration the manner and demeanor of the witnesses as they appeared on the stand and established their credibility. *Anderson v. State,* 207 Tenn. 486, 495, 341 S.W.2d 385 (1960). The verdict also displaced the presumption of the defendant's innocence, raised a presumption of his guilt, and put upon him the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826 (1910); *Ivy v. State,* 197 Tenn. 650, 652, 277 S.W.2d 363 (1954).

Upon a full consideration of all the evidence, we think that there was ample proof upon which the jury could reasonably find that the defendant did not act in self-defense and that he intended to go armed. *Brooks v. State,* 187 Tenn. 361, 364, 215 S.W.2d 785 (1948). Moreover, Professor Wharton says that if the defendant in any way challenges the fight, and goes into it armed, he cannot afterward maintain that, in attempting to take the assailant's life, he acted in self-defense. Wharton, Criminal Law, sec. 614 (12th ed.).

In any event, we do not think that the defendant has carried the burden of showing that the evidence preponderates against the verdict and this assignment must be overruled.

██ The defendant also contends that the trial court erred in limiting his explanation of his involvement in the shooting of his wife some six years prior to this incident. It appears that after the defendant was arrested for shooting Calloway, he gave a written statement to

the police in which he confessed this shooting and also stated that in 1956 he accidentally shot and killed his wife; and the State read this statement to the jury.

When the defendant took the stand, he undertook (and was permitted over the objections by the State), on direct examination, to explain in detail the circumstances wherein his wife was accidentally shot. When his counsel asked him how the matter was disposed of, however, the State once again objected and this time the Court sustained the objection, stating: "You have gone enough into that and it has nothing to do with this case whatsoever."

Defendant contends that inasmuch as this statement as to this accidental killing of his wife had been put before the jury, it was prejudicial and reversible error for the court to refuse to permit him to explain to the jury that the District Attorney had entered a nolle prosequi in the case for killing of his wife.

We think this contention is without merit. While it was improper to admit the part of defendant's statement concerning the shooting of his wife some six years before, there was no objection to its admission. Nor was it ever brought out before the jury that defendant had ever been arrested or charged with any offense in that matter. So, in these circumstances, we think it was not prejudicial or reversible error for the Trial Court to limit the witness's explanation as above indicated.

This disposes of all the questions raised by the assignments of error; all of them are overruled, and the judgment is affirmed.