# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 25, 2001 Session

## STATE OF TENNESSEE v. NATHANIEL T. WILLIAMS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-B-1409      Seth Norman, Judge**

---

### No. M1999-00790-CCA-R3-CD - Filed June 11, 2001

---

The defendant was convicted by a Davidson County Criminal Court jury of second degree murder and the possession of a weapon by a convicted felon for shooting a man to death in an automobile shop. The sole issue on appeal is whether the evidence was sufficient to support his conviction of second degree murder. Specifically, the defendant contends that the State failed to offer sufficient proof of the victim's cause of death. In support of his claim, he argues that the autopsy report, which states the cause of death as multiple gunshot wounds, was improperly admitted into evidence, that the medical examiner never directly testified that the victim died of gunshot wounds, and that no other evidence was presented to prove cause of death. After a thorough review, we conclude that the defendant waived any objection to the admission of the autopsy report by his failure to object at trial, and further, that sufficient evidence, other than the autopsy report, was presented to show that the victim died as the result of gunshot wounds. Consequently, the evidence at trial was sufficient to establish the defendant's guilt of second degree murder beyond a reasonable doubt. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Michael J. Flanagan (on appeal) and Justin Johnson (at trial), Nashville, Tennessee, for the appellant, Nathaniel T. Williams.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Charles Carpenter, Assistant District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Nathaniel T. Williams, was convicted by a jury in the Criminal Court of Davidson County of one count of second degree murder and one count of possession of a weapon by a convicted felon for the shooting death of Joseph Cox. The trial court sentenced him to twenty-four years on the second degree murder conviction, and two years on the possession of a weapon by a convicted felon conviction, with the sentences to be served consecutively, for an effective sentence of twenty-six years. In this appeal as of right, the defendant raises the sole issue of whether the evidence was sufficient to support his conviction of second degree murder beyond a reasonable doubt. Specifically, he argues that the evidence in the record is insufficient to show that the victim died of gunshot wounds. Based upon a careful review, we affirm the judgment of the trial court.

**FACTS**

On December 31, 1997, at 4:50 p.m., Officers Danny Warren and Randall Moore of the Metropolitan Police Department in Nashville were dispatched to a report of shots fired at 600 Main Street in East Nashville, a building which housed a pawn shop in front and an automobile window tinting and stereo installation business in the rear. En route, they received word that there were three shooting victims involved. Upon their arrival, Officers Warren and Moore, along with fellow Officers Robert Hautt and Jonathan Markline, discovered the victims inside the automobile shop at the rear of the building. Two of the three victims were critically injured and bleeding severely from gunshot wounds. One of these two, Joseph Cox, was lying face down on the concrete floor of the shop, while the second, Carlos Stewart, was lying with his head and torso inside a Cadillac parked inside the shop. The third victim, who had received noncritical wounds to both feet, was walking back and forth in the rear of the shop, eating a sandwich. Cox subsequently died as a result of his injuries.

On June 9, 1998, the Davidson County Grand Jury issued an indictment against the defendant, charging him with first degree murder of Joseph Cox, felony murder of Joseph Cox, attempted first degree murder of Carlos Stewart, and the unlawful possession of a weapon by a convicted felon.[1] Trial was held in the Davidson County Criminal Court from April 12-14, 1999.

At trial, Officer Danny Warren described finding Joseph Cox bleeding heavily and lying face down on the floor just inside the bay door leading into the shop. On the floor beside him was a large speaker box, with wires leading from it to the trunk of a 1992 two-door Cadillac parked inside the shop. Officer Jonathan Markline testified that Cox, who appeared to be "in a very critical state," was lying face down on the ground within five or six feet of the rear bay door, unsuccessfully struggling to rise to his hands and knees. Officer Markline believed that he was still on the scene, inside the pawn shop, when Cox died. Sergeant Robert Hautt recalled seeing a large amount of blood by the

_____

[1]An unnamed suspect was also indicted for first degree murder and felony murder of Joseph Cox, and attempted first degree murder of Carlos Stewart. The record does not reflect the disposition of the indictments against this unnamed suspect.

bay door of the shop, where Joseph Cox was lying face down on the concrete floor. His best recollection was that Cox was "flopping around in the floor, " looking like a "fish out of water."

Dominique Brown, an eyewitness who was thirteen years old at the time, testified that Cox and Stewart were lifting a large stereo speaker box into the trunk of the Cadillac when the defendant walked up to them and fired his weapon. Brown stated that the defendant first shot Stewart and then shot Cox. Brown ducked for cover. When he looked up again, he saw the defendant and Cox struggling over the gun, and heard Cox asking, "Why are you shooting me?" He heard the defendant answer, "You know what you did," before firing again at Cox. Brown identified the defendant as the shooter, both at trial, and from a photographic lineup on the night of the shooting.

Lacharsha Jenkins, a friend of the defendant's, testified that the defendant came to her home on the evening of the shooting and told her that he had been at the auto shop earlier in the day, where he had seen the man who had stolen his car. The defendant told her that he planned to steal the man's car in turn, but that the man had rushed him, they had scuffled, and his gun had gone off. According to Jenkins, the defendant had two guns with him that evening, a solid black one and a black one with a pearl handle. He gave her the solid black gun, with instructions that she throw it in the river. Instead of disposing of the weapon, however, Jenkins gave it to a friend.[2]

Officer Damien Huggins, a vice detective with the Metropolitan Police Department, testified that on February 27, 1998, the defendant, who had been arrested and incarcerated, requested to speak to him. Before taking his statement, he informed the defendant of his rights and had him sign a waiver of his rights. According to the defendant's statement, prior to the shooting, he and two friends had been carjacked by Cox and Stewart. Later, he and one friend had been in the auto shop when his friend recognized Stewart as the man who had carjacked them. The defendant thought that Cox must have seen the handle of the defendant's gun sticking up out of his coat pocket, because Cox suddenly rushed the defendant and began fighting for his gun. The defendant's friend shot at Stewart. As the defendant struggled with Cox, attempting to get the gun out of his pocket in order to protect himself, the gun fired twice. The defendant said that Cox then somehow got hold of the gun and tried to shoot the defendant, but the gun would not fire. Cox weakened and fell, and the defendant ran off. He told Detective Huggins that he and his friend had later burned their clothes and disposed of the guns but would not tell Huggins the location. He also steadfastly refused to disclose the name of his friend.

Dr. Emily Ward of the Davidson County Medical Examiner's Office testified that she performed the autopsy of Joseph Cox on January 1, 1998. Her examination of his body revealed three gunshot wounds: a graze wound to the chest; a penetrating wound caused by a bullet which entered near the left shoulder blade, went through the left lung, struck the aorta, passed through the

---

[2] Jenkins later recovered the gun and turned it in to the police. At trial, a Tennessee Bureau of Investigation firearms identification expert testified that he had examined the nine-millimeter weapon turned over by Jenkins, as well as bullet fragments recovered from the scene, and determined that at least two cartridge casings discovered at the scene had been fired by the weapon.

diaphragm and the liver, and exited on the right side of the front of the chest; and a penetrating wound caused by a bullet which entered the left side of the back above the hip bone, struck the pelvis, changed directions, and exited on the inside of the left buttock. Referring to the autopsy report, autopsy notes, and slides that had been taken of the victim's body, Dr. Ward stated that the bullet which perforated the lung, aorta, diaphragm, and liver caused "massive internal bleeding." They had measured the amount of blood that bled into the inside of the victim's body and found it to total more than two liters. Dr. Ward testified that the aorta is the largest blood vessel in the body, and that more than likely a person who suffered the type of aorta wound inflicted upon the victim would "bleed very rapidly and within a short period of time be very incapacitated."

After deliberations, the jury found the defendant guilty of second degree murder and unlawful possession of a handgun after a felony drug conviction. The trial court sentenced him to twenty-four years for the second degree murder conviction, and two years for the unlawful possession of a weapon conviction. The sentences were ordered served consecutively, for an effective sentence of twenty-six years. Following the denial of his motion for a new trial, the defendant filed a timely appeal to this court.

## ANALYSIS

The sole issue the defendant raises on appeal is the sufficiency of the evidence for his second degree murder conviction. Specifically, he contends that the State failed to offer sufficient proof that Joseph Cox died as a result of gunshot wounds. In support, the defendant argues that the medical examiner's report, which lists the cause of death as gunshot wounds, was not properly introduced into evidence, and that the medical examiner did not directly testify that the victim died as a result of gunshot wounds. The defendant argues that the improper admission of the autopsy report constituted plain error under the standards established in State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994). He asserts that, without the autopsy report, the evidence would not have been sufficient for a rational trier of fact to find that he caused the death of the victim beyond a reasonable doubt.

The State acknowledges that there was confusion surrounding the admission of the autopsy report into evidence. It argues, however, that the defendant waived any objection to the trial court's admission of the report by his failure to make a timely objection at trial. The State further argues that the improper admission of the report does not rise to the level of plain error under the five Adkisson factors, and that, even without the autopsy report, sufficient evidence was presented at trial from which the jury could reasonably infer that the victim died as a result of gunshot wounds.

When the sufficiency of the convicting evidence is challenged on appeal, the question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal

-4-

actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The defendant's conviction by the jury removed the presumption of innocence he enjoyed at trial and replaced it with one of guilt; on appeal, he now has the burden of demonstrating that the evidence was insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The autopsy report, which was received into evidence and marked as an exhibit for the record, clearly states the cause of Joseph Cox's death as multiple gunshot wounds. The defendant relies upon an ambiguity in the record, however, to argue that the autopsy report was not properly introduced as an exhibit at trial and, thus, should not have been considered by the jury in making its determination of his guilt. After Dr. Ward testified that she had brought Joseph Cox's autopsy report with her to court, the following exchange between the prosecutor and the medical examiner occurred:

> Q. And if I may approach. If you would compare this against your original and see if that is a correct photocopy of the autopsy report.
>
> A. (Witness viewing document.) Yes. What you've handed me is a photocopy of the report.
>
> Q. If I can show you another two-sided copy. Is that also a correct copy of the body diagram and notes that you took during the course of your autopsy?
>
> A. Yes, it is.
>
> MS. ANDERSON: Your Honor, at this time we will ask that that be marked as an exhibit for the State.
>
> THE COURT: It will be Exhibit Number 9.

The transcript does not indicate whether "that," and "it," as referred to by the State and the trial court, was the autopsy notes, the autopsy report, or both. Both documents, however, were apparently received into evidence and published to the jury. The record contains two documents labeled Exhibit 9: the one-page "Autopsy Notes," marked "Trial Exhibit #9A & B," and the separate "Autopsy Report," marked as "Trial Exhibit #9B." Thus, it appears that the State intended both the autopsy report and the autopsy notes to be included together as a collective exhibit, and that the trial

court received them as such. Admissibility of evidence rests within the discretion of the trial court, and the trial court's decision to admit evidence will be reversed only upon the showing of abuse of that discretion. State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); Inman v. Aluminum Co. of America, 697 S.W.2d 350, 354 (Tenn. Ct. App. 1985). In this case, there is no question but that the autopsy report was admissible evidence, as a proper foundation for its introduction was laid. See Tenn. R. Evid. 901(a)–(b)(1); see also Bolen v. State, 544 S.W.2d 918, 920 (Tenn. Crim. App. 1976) (stating that physical evidence may properly be introduced at trial either when identified by a witness, or when established from a proper unbroken chain of custody).

The defendant argues, nonetheless, that the autopsy report should not have been given to the jury because it was not properly admitted as an exhibit. He offered no objection to its introduction at trial, however. The record reflects that as Dr. Ward continued her testimony, she referred not just to her autopsy notes, but also to the autopsy report. Defense counsel did not object to Dr. Ward's use of the autopsy report in her testimony. The failure to raise a timely objection to the introduction of evidence at trial results in a waiver of any complaint about the admission of such evidence. Tenn. R. App. P. 36(a); see also State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (citing State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981)). This is true even if the party objecting to the evidence would have had legitimate grounds to object at trial. See id. In this case, as previously stated, there is no doubt that the autopsy report was admissible evidence, and we have no hesitation in ruling that the defendant waived his right to object to any irregularity in the manner of its introduction by his failure to raise a contemporaneous objection at trial. This decision is in line with our decisions in other cases. See e.g., State v. Richard Allen Kidd, II, No. 03C01-9607-CC-00272, 1997 WL 789909, at *4 (Tenn. Crim. App. Dec. 23, 1997) (concluding that defendant's failure to raise timely objection at trial resulted in waiver of objection to irregularity in trial court's practice of allowing exhibits to be published to jury without following formal procedures to admit them into evidence).

Notwithstanding his failure to object, the defendant contends that he is entitled to relief under the "plain error" doctrine, which allows an appellate court to take notice at any time of plain errors affecting substantial rights of the accused. See Tenn. R. Evid. 103(d); Tenn. R. Crim. P. 52(b); Tenn. R. App. P. 36(b). The defendant argues that the five factors set forth in State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), for determining when plain error has occurred were met in his case. We disagree.

In State v. Smith, 24 S.W.3d 274 (Tenn. 2000), our supreme court adopted the Adkisson test as the proper standard for reviewing a record to determine if an error for which a defendant failed to offer an objection at trial rises to the level of plain error, entitling the defendant to appellate review. Id. at 283. Under Adkisson, five factors should be considered to determine if an error rises to the level of plain error:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected;

> (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

Id. at 282 (quoting Adkisson, 899 S.W.2d at 641-42)). In this case, the ambiguity surrounding the introduction of the autopsy report, and the confusion in the marking of the exhibits to the trial, do not constitute the breach of "a clear and unequivocal rule of law." Consequently, any irregularity in the admission of the autopsy report does not rise to the level of plain error. We, therefore, conclude that the autopsy report, unequivocally stating the cause of death as multiple gunshot wounds, was properly before the jury.

Moreover, we agree with the State that even without the autopsy report, sufficient evidence was presented from which the jury could conclude that Joseph Cox died of gunshot wounds. At the beginning of her testimony, Dr. Ward explained that the purpose of an autopsy is to determine the cause of death. On her autopsy notes, which the defendant concedes were properly admitted as an exhibit, under a heading entitled "DIAGNOSES," is written "multiple GSW's." The jury heard testimony that the defendant shot the victim, that the victim was bleeding profusely and lying in a large pool of blood when police officers arrived at the scene, and that he died shortly thereafter. Dr. Ward testified that the victim had three bullet wounds, and that one bullet had gone through his left lung, diaphragm, and liver, and perforated his aorta, the largest blood vessel in the body, resulting in massive blood loss. The State questioned Dr. Ward about the consequences of a wound to the aorta:

> Q. But wound number one, which was an aorta wound, is it true that a person would have died very quickly from that wound?
>
> A. Well, it depends on what you mean by very quickly. It wouldn't cause instantaneous death, but a wound to the aorta would typically cause somebody to bleed very rapidly and within a short period of time be very incapacitated.
>
> Q. Right. It's hard to say, but more than likely very quickly, I guess, correct?
>
> A. Yes. That's right.

Thus, the evidence in the record, apart from the autopsy report, was more than sufficient to prove cause of death. See State v. Bobby Weaver, No. 02C01-9307-CC-00143, 1995 WL 568420 at *5 (Tenn. Crim. App. Sept. 27, 1995) (citing Cathey v. State, 191 Tenn. 617, 619, 235 S.W.2d 601, 602 (1951), for proposition that death may be presumed to have been caused by a victim's obvious wounds, especially when there is no suggestion that he died from other any other cause than the one relied upon by the State).

Second degree murder is defined at Tennessee Code Annotated Section 39-13-210(a)(1) as "[a] knowing killing of another." Tennessee Code Annotated Section 39-11-302(b) provides:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

To prove the defendant guilty of second degree murder, the State had to establish that he acted knowingly, and that his actions resulted in the death of another.

The evidence at trial, viewed in the light most favorable to the State, showed that the defendant approached Joseph Cox as he was engaged in installing a stereo speaker into the trunk of a car, pulled a gun, and shot Cox several times. The evidence further showed that Cox died as a result of his gunshot wounds. The evidence at trial was clearly sufficient to support the defendant's conviction of second degree murder.

## CONCLUSION

After a careful review of the record, we conclude that sufficient proof was offered to show that Joseph Cox died as a result of gunshot wounds caused by the defendant. Accordingly, the evidence was sufficient to convict the defendant of second degree murder, and the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE