KENNETH LESTER

*v.*

STATE OF TENNESSEE.

393 S.W.2d 288.

(*Nashville,* December Term, 1964.)

Opinion filed July 6, 1965.

Petition for Rehearing Denied September 7, 1965.

James T. Havron, Metropolitan Public Defender, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, Edgar P. Calhoun, Assistant Attorney General, for the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Lester was indicted and convicted of robbery with a deadly weapon, and was sentenced to twenty years in the State penitentiary. From this judgment he has seasonably appealed. Able briefs have been filed, and, after thoroughly considering the record and authorities cited, we are now in a position to decide the matter.

Essentially the only question involved herein is whether or not the wife of the plaintiff in error may, after having the facts and circumstances explained to her, allow the officers to make discoveries from which evidence is introduced towards the guilt of the accused without the necessity of a search warrant. In other words, may the wife consent to a search of the home of the wife and the husband, the plaintiff in error here, without his consent and when he is not present, by officers whereby they secure certain evidence which is introduced against the interest of the plaintiff in error?

There is no serious dispute about the facts. On November 29, 1963, one Sue Brewer left the place where she was employed in downtown Nashville and drove to her home. This was in the early morning hours. The plaintiff in error followed her and, when she parked her car near her apartment, robbed her and also apparently attempted to abduct her but was scared away. In this robbery plaintiff in error slashed this woman on the face with a knife-like instrument and beat her. During the struggle between

them she pulled some buttons off the coat that he was wearing. When another car drove up near where this was happening the plaintiff in error ran. At the trial he was identified by Miss Brewer and by the man who came up and saw the robbery towards the end.

The stationwagon the plaintiff in error was driving belonged to a Mrs. Buckmon who stated that she had loaned this stationwagon to one Herbert, who stated that he had loaned it to the plaintiff in error. As a result of this information the officers went to the home of plaintiff in error and were invited inside by his wife. The officers advised her of the case up to that point and asked about her husband's whereabouts and the clothing worn on the night of the robbery. The wife readily gave the officers the requested information and even went to a closet in the living room, got out the coats of the plaintiff in error, and handed them to one of the officers. The officers could see that three buttons were missing from the front of one coat and a small button was missing from a sleeve. There was a button in the pocket and also a black scarf.

Later plaintiff in error was arrested and during the trial he testified in his own behalf. He admitted that the coat in question belonged to him but said that the buttons had been missing for some time prior to the robbery herein. There was other evidence which connected the plaintiff in error with the crime, but in view of the fact that it is overwhelmingly to the effect that this man committed this crime there is no argument raised concerning the evidence. The bill of exceptions is in the narrative form.

 Considering the word "search" in the broad sense, we seriously doubt if there were such a search in the present instance as to be violative of the constitutional

rights of the plaintiff in error as guaranteed under the Fourth Amendment of the United States Constitution and under Article 1, Section 7, of the Constitution of the State of Tennessee. A "search" as applied under the provisions of these Constitutions means searches and seizures by an examination of a man's home, buildings, premises, his person, or what not, with a view to the discovery of contraband, illicit stolen property, or some evidence of guilt to be used in a criminal prosecution against him and implies invasion and quest which in turn implies some sort of force, actual or constructive, much or little.

■ In the instant case there was no search in this sense of the word, but when the wife was told what had happened and what they were looking for she voluntarily went to the closet and brought out the coats and things of the kind and gave them to the officers. We think, under these circumstances, she had the right and did waive any right that the man had to rely upon these constitutional prohibitions. Then, too, there is the further fact that on the trial of this case the plaintiff in error readily identified the coat in question, but claimed that the buttons missing therefrom had been missing before the facts in this case happened. Of course, this evidence was contradicted and this left a question of fact for the trial judge and jury to determine. This fact has been determined against the plaintiff in error.

Both briefs in the present case ably set forth the contentions of the respective parties. We, after fully investigating the authorities pro and con, feel that the statements made in the State's brief are sound and are absolutely a fair summary of the case from any standpoint. The State says in its brief;

"It is generally held that persons having equal rights to use or occupation of the premises may consent to a search of the premises and that such consent will be binding upon the co-occupants. When the occupants are husband and wife, however, there is a sharp conflict in other jurisdictions as to the existence of any implied authority on the part of the wife to consent to a search of her husband's premises or seizure of property found thereon. These principles are discussed in [*Dalton v. State of Indiana*, 230 Ind. 626, 105 N.E.2d 509] 31 A.L.R.2nd 1071. It appears that the cases collected therein are about equally divided on either side of the wife-husband question.

"Since the publication of the aforementioned annotation in 1953, there have been a number of cases decided on the issue, and it appears that there is a definite trend toward adoption of the proposition that a wife may consent for her husband, at least to some degree. Of the causes digested in the A.L.R. system from 1953 to 1964, the courts have held in the following that the wife may consent for her husband: *People v. Dominguez*, 144 Cal.App.2d 63, 300 Pac.2d 194; *Hoop* [Hook] *v. State*, 15 Misc.2d 672, 181 N.Y.S.2d 621; *Padilla v. State*, 160 Tex.Crim. [R.] 618, 273 S.W.2d 889; *Joslin v. State* [165], Tex.Crim. [R.] [161], 305 S.W.2d 351; *People v. Carter*, 48 Cal.2d 737, 312 Pac.2d 665; *People v. Shambley*, 4 Ill.2d 38, 122 N.E.2d 172; *People v. Perroni*, 14 Ill.2d 581, 153 N.E.2nd 578; *Bellam v. State* [233 Md. 368], 196 A.2d 891 (Md); *State v. Shephard* [255 Iowa 1218], 124 N.S. [W.]2d 712 (Iowa) (This case involved the husband consenting to a search for his wife.)

''The courts have refused to allow the wife to consent for her husband in only four cases digested by A.L.R. since 1953, the same being *Manning v. Commonwealth*, Ky., 328 S.W.2d 421; *Foster v. U. S.* [8 Cir.], 281 Fed. 2d 310; *State v. Evans* [45], Hawaiian Rep [622], 372 Pac.2d 365; *State v. Pina*, 94 Ariz. 243, 383 Pac.2d 167. Actually, only the Arizona case adopts the strict rule that a wife has no implied authority to waive her husband's rights relative to search and seizure. The holding in each of the other cases was considerably more limited and is distinguishable in that it involved coercion, a business house, or a search of the husband's personal effects.''

Of course, cases may arise wherein the officers have coerced or forced through their power the wife to show. them things, or where she was responding to the authority of a search warrant and was merely submitting to the warrant, or cases where the facts showed that she wanted her husband convicted and they were estranged and she was doing things to the officers, and under such circumstances a different situation would probably arise. But where a man and woman are living, as far as the record shows, a normal life, that is, their relations as man and wife are normal, and they are living in a home together, and the officers go there and explain to the wife what they came for and the wife then voluntarily gets and shows the clothing in question to the officers, we think unquestionably she has the right to do so, and has waived the rights of her husband to the things she voluntarily shows the officers. In such circumstances it is not necessary to have a search warrant for the officers to go there and make a search, because when she does volunteer to get these

things and show them to the officers in the strict sense of the word they are not making a search.

We think, too, that under the facts here where the man does testify that the coat was his and raises an issue as to the incriminating evidence therein that he waives any objection as to whether or not the coat was secured by reason of a search warrant. See *Batchelor v. State*, 213 Tenn. 649, 378 S.W.2d 751.

After thoroughly considering the matter and the authorities therein cited, we are convinced that no error has been committed herein, and for the reasons herein stated, the judgment below must be affirmed.

### On Petition to Rehear

Counsel for the plaintiff in error has filed herein a courteous, dignified and forceful petition to rehear to which we have given very thorough consideration.

■ In the first four grounds of this petition, it is contended, in general, that there actually was a search. It is in effect argued that the wife of the petitioner admitted the officers and gave them the coat in compliance with "orders" of the officers. It is likewise argued that the trial judge held that there was a search and that at any rate the officers seized petitioner's coat and took it with them after the man's wife had handed it to them. These arguments largely deal with the factual situation which we considered in preparing our original opinion. We found from this evidence, and think unquestionably this is correct, that the wife, an intelligent woman, a nurse by trade, voluntarily gave the officers the coat and wanted to cooperate with the officers in every way that she could because she thought that it was "the right thing to do." Under such a factual situation we do not think there was

a search. The facts of this case, as to her consent, are very similar to the facts in a recent case, opinion prepared by the late Mr. Justice Holmes, of *Shafer v. State,* 214 Tenn. 416, 381 S.W.2d 254. In the Shafer case we found that there was no illegal search. Unquestionably the same conclusion must be reached here.

The trial judge found, and we think the record clearly supports this finding, that there was no coercion of the man's wife in this case at all, and then clearly, if there is no coercion, there can be no search under any stretch of the imagination, unless the search occurred after the officers received possession of the coat. It is obvious that whatever consent there was to start with necessarily carried over. If the coat was legally obtained, clearly no constitutional rights have been violated and thus no constitutional questions have been resolved.

It is very forcefully argued that we failed to distinguish this case from that of *Byrd v. State,* 161 Tenn. 306, 30 S.W.2d 273, and, since we did not so distinguish this case from the Byrd case, we should have followed the Byrd case. A careful reading of the Byrd case clearly shows that it is not in point with the facts of the instant case. In the Byrd case it was found that the officers' request on that "ignorant woman" was equivalent to a demand for the purpose of that particular situation. As we have shown in the original opinion, and heretofore in this opinion, there was no demand and the woman herein was not an ignorant woman. She was a nurse by profession and had attended college.

It is argued that we "inadvertently overlooked the fact" that the case of *Batchelor v. State,* which we cited in our original opinion, and the cases therein cited, rely primarily upon admission of guilt rather than naked

624

ownership of the seized property. This argument is in connection with our statement that the petitioner waived any objection he might have to the search warrant when he testified as to his ownership of the coat and thus attempted to say where the buttons had gone, etc. We think that our statement and conclusion in the original opinion were correct, and even under this situation, by the man thus testifying regardless of what we have heretofore said about the search warrant, and even if the coat had been illegally obtained, by thus testifying the man makes the evidence competent.

■ There are many cases in this jurisdiction and others which deal with the broad principle that if a defendant testifies in substance as to evidence which has been otherwise erroneously admitted, then his testimony clears whatever error there might have been. See *Zachary v. State,* 144 Tenn. 623, 234 S.W. 758; *Moon v. State,* 146 Tenn. 319, 242 S.W. 39; *Switzer v. State,* 213 Tenn. 671, 378 S.W.2d 760; *Owens v. State,* 202 Tenn. 679, 308 S.W. 2d 423; *Cathey v. State,* 191 Tenn. 617, 235 S.W.2d 601; and others. Thus, these cases clearly show that the rule is not limited to the situation where the defendant takes the stand and admits he committed the crime with which he was charged.

■ Finally, it is argued that we did not pass upon the assignment of the excessiveness of the verdict. This assignment in our view is without merit because the jury found the defendant guilty of armed robbery and the verdict of twenty years is comparatively light when it is considered that armed robbery is a capital offense.

After carefully considering the petition to rehear it must be overruled.