**Bill J. JENKINS, Petitioner,**

v.

**Uel HARTMAN, Sheriff, etc., Respondent.**

**Civ. A. No. 2486.**

United States District Court, E. D. Tennessee, Northeastern Division.

April 30, 1970.

**304**

W. Stanley Yarbro, Johnson City, Tenn., for petitioner.

Bart Durham, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION

C. G. NEESE, District Judge.

The respondent undertakes to show cause why the federal writ of habeas corpus applied for by the petitioner Mr. Jenkins should not be granted by his answer of April 3, 1970 herein. The gravamen of these reasons are that there was no illegal search and seizure, and thus no violation of the petitioner's federal constitutional right to be secure in his effects from unreasonable search and seizure. Fourth Amendment to the federal Constitution.

The respondent asserts that the testimony at the trial in which the petitioner was convicted, and as a result of which he is now incarcerated,

> shows that the Petitioner was arrested at the Sports Center in Johnson City and placed under arrest on a charge of investigation of attempted murder. It is uncontradicted that the spent shells which were introduced in evidence were visible in the seat and and on the floor of Petitioner's automobile. * * * The officer testified that he did not search the car until he placed the man under arrest and brought him out, but through the window of the car he could see the empty cartridges. * * *

This is neither a complete nor a completely-accurate account of such testimony, as this Court interprets it. The assistant chief of police of Johnson City appears to have testified that he received information that a felony, by the shooting from a dark Mustang automobile by " * * * a dark-headed, heavyset * * * " person, had occurred in his bailiwick. He saw an automobile fitting this description in a parking lot, located at a point requiring a trip of some five or ten minutes by vehicle from the scene of the shooting. He looked through the windows of this vehicle and saw a spent shell of a rifle cartridge on its seat and another on the floorboard thereof. This officer then went to the nearby Sportscenter, where he saw the defendant Mr. Jenkins in conversation with another officer. He knew that Mr. Jenkins drove customarily a late-model, dark Mustang automobile.

The assistant police chief approached Mr. Jenkins, placed him under arrest for " * * * investigation of an attempted murder * * * ", asked him to accompany the officers outside the business establishment, and upon request again advised the petitioner of his arrest and the charge on the contiguous sidewalk. This officer then " * * * took * * * " Mr. Jenkins' car keys from him and placed him in an automobile with yet another officer, for return to an automotive service station, to allow witnesses to undertake to identify him as the assailant.

The assistant chief then went with another officer to the parking lot where the petitioner's automobile remained parked and retrieved the spent rifle cartridge shells from the interior thereof. (To this point, this Court finds no infringement of any of the petitioner's federal constitutional rights.) This of-

ficer then utilized the car keys he had seized from Mr. Jenkins to open the trunk of his automobile. Therein he discovered, and seized therefrom, a .22-calibre rifle and a quantity of .22-calibre rifle cartridges. From the odor of freshly-burnt powder, it was this officer's opinion that this rifle had been fired recently. It is undisputed that the officer was not authorized by a warrant, issued by a judicial officer, to search the trunk of the petitioner's automobile.

The trial court agreed with defense counsel that the search of the petitioner's automobile was not incidental to his arrest on information that a felony had been committed, and that the petitioner had probably committed it. He admitted the evidence of the rifle and unfired cartridges on the basis of his understanding " * * * of our law: if an officer has information that a felony's been committed that he has search rights that he does not have in a misdemeanor case, or if he's out on a fishing expedition. * * * "

This Court is not aware of any rule of law which authorizes a law enforcement officer to make a warrantless search with greater aplomb, when he has information that a felony has been committed, than when a misdemeanor is committed in his presence; diligent search has not produced one. Of course, if this officer, in addition to the information he possessed, recognized the searched vehicle as that of the petitioner and had reasonable grounds and probable cause to believe that the petitioner was the person who committed such felony, he could have looked in the petitioner's automobile in his search for the petitioner to arrest him. However, as was written nearly two decades ago for the Supreme Court:

> * * * The Fourth Amendment prohibits both unreasonable searches and unreasonable seizures, and its protection extends to * * * "effects." Over and again this Court has emphasized that the mandate of the Amendment requires an adherence to judicial processes. * * * Only where in-

cident to a valid arrest * * * or in "exceptional circumstances," * * * may an exemption lie, and then the burden is on those seeking the exemption to show the need for it. * * * In so doing the Amendment does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended. * * * Officers instead of obeying this mandate have too often, as shown by the numerous cases in this Court, taken matters into their own hands and invaded the security of the people against unreasonable search and seizure. * * * [footnote references omitted.]

United States v. Jeffers (1951), 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (headnote 1). Therein, Mr. Justice Clark cited an earlier opinion by the late Mr. Justice Jackson, which contains this language:

> * * * The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's * * * and [effects] * * * secure only in the discretion of police officers. * * * When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman * * *. [Footnote reference omitted.]

Johnson v. United States (1948), 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (headnote 3). The Court listed therein as "exceptional circumstances", which might justify an officer's searching and seizing property without a warrant, situations where a suspect was fleeing or likely to take flight and the immediately present threat of the removal or destruction of contraband, or the evidence of implements of the crime or its fruits. 333 U.S. at 14–15, 68 S.Ct. 367, 92 L.Ed. at 441.

These generalized statements of the controlling law were more particularized with reference to the warrantless search of automobiles some dozen years afterward in the following language of Mr. Justice Black:

* * * [I]n the case of motorcars, the test still is, was the search unreasonable. Therefore we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made.

It is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a *contemporaneous* search of the person of the accused for weapons or for the fruits of or implements used to commit the crime.

* * * This right to search and seize without a search warrant extends to things under the accused's *immediate* control, * * * and, to an extent depending on the circumstances of the case, to *the place where he is arrested,* * * *. The rule allowing contemporaneous searches is justified, for example, by the *need to seize weapons* and other things *which might be used* to assault an officer or effect an escape, as well as by *the need to prevent the destruction of evidence of the crime*—things which might easily happen where the weap-

on or evidence is on the accused's person or under his *immediate* control. But these justifications are *absent where a search is remote in time or place from the arrest.* Once an accused is under arrest and in custody, *then a search made at another place, without a warrant, is simply not incident to the arrest.* * * * Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But *this does not decide the question of the reasonableness of a search at a later time and at another place.* * * * The search of the car was not undertaken *until* petitioner and his companions *had been arrested and taken in custody* * * *. At this point there was *no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime* * * *. Nor, since the men were under arrest * * * and the car was in police custody * * *, was there any danger that the car would be moved out of the locality or jurisdiction. * * * We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible. * * * [Emphases supplied.]

Preston v. United States (1964), 376 U.S. 364, 367–368, 84 S.Ct. 881, 883–884, 11 L.Ed.2d 777, 780–781 (headnotes 4–10, inclusive, 1).

" * * * [A] search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. * * * The search was completely unrelated to the arrest, both as to time and as to place. * * * "

Stoner v. California (1964), 376 U.S. 483, 486–487, 84 S.Ct. 889, 891, 11 L.Ed. 2d 856, 859 (headnote 2). Again, afterward, Mr. Justice Black wrote:

\*   \*   \*   \*   \*   \*

We made it clear in Preston [376 U.S. 364, 84 S.Ct. 881] that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case \* \* \*. In Preston the search was sought to be justified primarily on the ground that it was incidental to and part of a lawful arrest. There we said that "[o]nce an accused is under arrest and in custody, *then a search made at another place, without a warrant, is simply not incident to the arrest."* \* \* \* In the Preston case, it was alternatively argued that the warrantless search, after the arrest was over and while Preston's car was being held for him by the police, was justified because the officers had probable cause to believe the car was stolen. But the police arrested Preston for vagrancy, not theft, and *no claim was made that the police had authority to hold his car* on that charge. *The search was therefore to be treated as though his car was in his own* or his agent's *possession, safe from intrusions by the police* or anyone else. \* \* \* [Emphases supplied.]

Cooper v. California (1967), 386 U.S. 58, 59–60, 87 S.Ct. 788, 790, 17 L.Ed. 2d 730, 732 [1, 2].

The application of *Preston* to the circumstances at bar is buttressed by another state case arising within this very district. There, over the objection of the defendants, who were on trial on a charge of criminal contempt committed by violating an injunction issued in connection with a labor dispute, barring, *inter alia,* the infliction of damage upon the person or property of nonstrikers, the trial judge admitted in evidence an air rifle. Shots had been fired from a passing automobile at the home of a nonstriker; and a shot, fired in return, was thought to have struck the back of the fleeing car. After this suspicion was reported to law enforcement officials, a deputy sheriff spotted a suspicious car and began following it. It raced away and outdistanced the pursuing officer, who caused it to be stopped by policemen in Athens, Tennessee. When the deputy arrived on the scene, he arrested the defendants, and they were taken to the local jail. The vehicle in which they had been riding was then parked just outside the jail. While the defendants were inside the jail, the deputy sheriff and several city officers hurriedly searched the car of the defendant Mr. McKinney without a warrant and discovered the air rifle under the front seat. In reversing the conviction of the defendants, Mr. Justice White wrote for the Supreme Court (unanimous on this issue):

\* \* \* The State \* \* \* asserts that it [the search] was not in violation of the Constitution because "reasonable." While the record is not entirely clear, petitioners appear to have been arrested for reckless driving. Whether \* \* \* a car may constitutionally be searched "incident" to arrest for a traffic offense, *the search here did not take place until petitioners were in custody* inside the courthouse *and the car was parked* on the street outside. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777 (1964), holds that *under such circumstances a search is "too remote in time or place to [be] incidental to the arrest* \* \* \*." 376 U.S. at 368, 84 S.Ct., at 884 [11 L. Ed.2d at 781].

\* \* \* In the instant case there is no indication that the police had purported to impound or to hold the car, that they were authorized by any state law to do so, or that their search of the car was intended to implement the purposes of such custody. Here the police seem to have parked the car near the courthouse merely as a convenience to the owner, and to have been willing for some friend or rel-

ative of McKinney (or McKinney himself if he were soon released from custody) to drive it away. The reasons that made the warrantless search in Cooper [v. California, *supra*] reasonable thus do not apply to the search here. The Court discussed in Cooper, 386 U.S., at 61, 87 S.Ct., at 790, [17 L.Ed.2d at 733], the reasons why that case was distinguishable from Preston. *The case before us is like Preston* and unlike · Cooper according to each of the distinguishing tests set forth in the Cooper opinion. [Emphasis supplied.]

Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). The cases so holding have, however, always insisted that the officers conducting the search have "reasonable or probable cause" to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search. * * * As far as this record shows, [the deputy sheriff] Powers knew only that the car he chased was "an old make model car," that it speeded up when he chased it, and that it contained a fresh bullet hole. The evidence placed upon the record is insufficient to justify a conclusion that McKinney's car was searched with "reasonable or probable cause" to believe the search would be fruitful. * * * Dyke v. Taylor Implement Mfg. Co. (1968), 391 U.S. 216, 220–222, 88 S.Ct. 1472, 1475–1476, 20 L.Ed.2d 538, 543–544 [9], [10, 11].

All that seems to this Court to distinguish *Preston* from the issue under consideration, is that Preston's car had been towed to the garage and was in police custody before the warrantless search of it was made; while, here, Mr. Jenkins' automobile was parked, when it was searched, where he (apparently) had left it before he was placed under arrest. In both instances, the accused persons had been placed under arrest and were in custody, and the respective searches of their respective automobiles were made at other places, respectively, than the respective places of arrest. If the search of Mr. Preston's automobile without a warrant was not incident to his arrest, this Court concurs with the trial judge that it is difficult to comprehend how the search of Mr. Jenkins' automobile without a warrant was incident to his arrest.

Honorable Robert K. Dwyer, writing for the Court of Criminal Appeals of Tennessee, on the appeal of the petitioners' judgment of conviction, also does not appear to find the warrantless search of the trunk of the petitioner's automobile justified as an incident to his lawful arrest. Instead, he decided:

* * * The defendant, taking the stand and giving evidence about the rifle and shells, waived any objection to the legality of the seizure of the rifle * * *, citing Lester v. State (1964), 216 Tenn. 615, 393 S.W.2d 288. Jenkins v. State, no. 24, Washington County, C.Cr.App.Tenn. (1969), certiorari denied (1970).

This Court has commented on the threshold finding by former Chief Justice Hamilton S. Burnett for the Tennessee Supreme Court in *Lester*, that therein, contrary to the instant situation, there was no seizure of an "effect", without a search which infringed Lester's rights " * * * as guaranteed under the Fourth Amendment of the United States Constitution * * * ". *Ibid.*, 216 Tenn. at 618–619, 393 S.W.2d at 289 [1]. See memorandum opinion and order herein of March 17, 1970.

■ Thus, it is the finding and conclusion of this Court that this warrantless search of the locked trunk of the petitioner's automobile, at a time and place remote from the time and place of his arrest, was unreasonable within the purview of the Fourth Amendment

to the federal Constitution, as made applicable to the states by the Fourteenth Amendment thereof. The remaining question is whether this Court can further find and conclude that the erroneous admission in evidence of these effects of the petitioner can be deemed harmless error beyond a reasonable doubt. Here again, this Court is guided by the pen of Mr. Justice Black, as follows:

* * * [T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

* * * [H]armless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. What harmless-error rules all aim at is a rule that will save the good in harmless-error practices while avoiding the bad, so far as possible.

* * * [T]he approach of this Court in deciding what was harmless error in our recent case of Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 * * * [presented as] * * * [t]he question * * * whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., at 86–87, 84 S.Ct. at 230 [11 L.Ed.2d at 173]. * * * [T]his statement * * * belies any belief that all trial errors which violate the Constitution automatically call for reversal. At the same time, however, like the federal harmless-error statute, it emphasizes an intention not to treat as harmless those constitutional errors that "affect substantial rights" of a party. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under Fahy, be conceived of as harmless. Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. * * * We, therefore, * * * hold * * * that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * * [(T)he original task of applying such a test] * * * is a familiar standard to all courts * * *. Chapman v. California (1967), 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705, 709–711 [5], [6, 7], rehearings denied (1967), 386 U.S. 987, 87 S.Ct. 824, 17 L.Ed.2d 705, and 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241.

Although the respondent makes no showing that the federal constitutional error committed herein was harmless, in performing its original task of applying this familiar standard, this Court declares a belief that the federal constitutional error committed on the criminal trial of the petitioner, as a result of which he stands convicted and is now incarcerated, was harmless beyond a reasonable doubt. The wife of the victim of this shooting, Mrs. Linda Casey, and his sister, Mrs. Diane Fox, were eye-witnesses to this shooting. They both positively identified the petitioner as the person who shot the victim with a rifle. They testified without dispute that they saw the petitioner, when he opened the door of his automobile shortly before the crime, leaned out and looked back at the car in which they were riding, the lights of which illuminated the petitioner, and that it was this same person who fired the shot from a rifle which struck the victim's foot. The spent cartridge shells found in the petitioner's vehicle so soon afterward corroborate to a degree this testimony of these eye-witnesses. Thus, even if the rifle had never been found or had not been admitted in evidence at the trial, the direct testimony of these credible eye-witnesses to the incident would have provided positive and suffi-

cient untainted evidence for the jury to have found the petitioner guilty beyond a reasonable doubt of an assault with the intent to commit the murder of the victim in the second degree.

What has been set forth hereinabove, with reference to the harmlessness of the error in the reception of inadmissible evidence by the trial court, applies in equipoise to the intemperate language utilized by the prosecuting attorney in his comments to the jury and his asking inadmissible questions of the petitioner, concerning the latter's threats to kill the former husband of his wife. Such conduct is deplored and condemned, but the fact remains that it constituted harmless error beyond a reasonable doubt, because of the overwhelming evidence in the record of the petitioner's uncivilized and pervasively-dangerous public crime. *Cf.* Harrington v. California (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, 288 [9].

It appearing from the petitioner's application and the return of the respondent, certifying the true cause of his detention of this prisoner, that law and justice require that the petitioner be denied all relief, and such application and return presenting only issues of law, 28 U.S.C. § 2243, judgment will enter dismissing the petitioner's application for the federal writ of habeas corpus.