291 So.2d 195 (1974)
James E. DEES, Petitioner,
v.
STATE of Florida, Respondent.
No. 44235.
Supreme Court of Florida.
February 27, 1974.
Richard A. Krause, Ormond Beach, for petitioner.
Robert L. Shevin, Atty. Gen., and Enoch J. Whitney, Asst. Atty. Gen., for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, First District, reported at 280 So.2d 51. Conflict has been alleged between the decision sought to be reviewed and State v. Blakely[1] and Carlton v. State.[2] The petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by Article V, Section 3(b)(3), Constitution of the State of Florida, F.S.A. The writ must be, and hereby is, discharged, for reasons which will be set out below.
The facts of the case are as follows:
This proceeding arises from the appeal by the State of the trial court's order suppressing *196 evidence of stolen property in a criminal prosecution against petitioner.
Briefly, petitioner's wife met the officers, who were without a search warrant, at the door of the residence. She proceeded to give them some items that she identified to be stolen property. She then led them to various rooms and turned the items over to the officers, piece by piece.
In its order, trial court noted:
"[T]he facts behind the Motion to Suppress are as follows:
"1. That the premises from which the items were taken and sought to be suppressed, are owned by the Defendant in his name only.
"2. That the Defendant's wife did voluntarily turn over to the Sheriff's Department, as represented by Deputy Sheriff McBride and Deputy Sheriff Calhoun, certain items properly under the jurisdiction of the Defendant.

"3. That prior to the relinquishing of custody of said items, the wife signed a consent to search and waiver included therein.

"4. That the representatives of the Volusia County Sheriff's Office had adequate time in which to procure a valid search warrant.
"5. That the Defendant was under arrest at the time of the signing of the consent, but said arrest did not occur on the premises in question and owned by the Defendant, nor was any search made incidental to arrest.
"6. That Defendant did not consent to said search, or to the turning over of said property under control of the defendant.
"That during the course of oral argument, Defendant's position was established to the effect that the turning over of property to the Volusia County Sheriff's Department was done so illegally by virtue of the wife consenting to a search of the premises owned solely by her Husband.
"That the State's argument to this Court was that the property was not obtained through illegal search and seizure, but through a `proffer' from the wife to the Volusia County Sheriff's Office of property under the control of her husband, the Defendant herein.
"That this Court, after due study and consideration of the case of State vs. Blakely, Fla., 230 So.2d 698, District Court of Appeal, Second District, January 23, 1970, finds as follows:
"1. That this Court, under the aforecited case must treat the consent to search as though said search procured the items seized and again, in view of the aforecited case, such a search without the consent of the Defendant or without the procurement by the Volusia County Sheriff's Office of a valid search warrant, which they had adequate time to procure, the search be and it is hereby declared illegal and the subsequent seizure of property, equally unlawful....
"IT IS ACCORDINGLY ORDERED that the Defendant's motion to suppress be and the same is hereby affirmed in toto and the search be and the same is hereby declared to be illegal and the property obtained from said search null and void as to evidentiary value in these proceedings." (Emphasis supplied.)
On appeal, the First District reversed the order of the trial court, holding:
"The trial court granted the motion on authority of State v. Blakely, 230 So.2d 698 (Fla.App. 1970). Appellant contends that the case at bar is distinguishable from Blakely, supra, in that here the property comprising the suppressed evidence was voluntarily given to the officers *197 by appellee's wife. We agree and reverse.

"In Blakely, the court held that the husband and wife relationship itself, without more, does not impute authority to one spouse to waive the other's constitutional right to demand a search warrant for the search of his premises. In that case, an officer from the sheriff's criminal investigation department arrived at Blakely's apartment after the latter had been arrested and removed from the apartment. The officer asked appellee's wife if he could search the apartment and she asked if he had a warrant. He said he didn't have one but that if she didn't want him to search without one he would obtain a warrant and then search the premises. She then said that under those circumstances he could go ahead and look. The officer looked and found the evidence suppressed. Although Mrs. Blakely subsequently signed a consent to the completed search, the court granted Mr. Blakely's motion to suppress on the grounds recited above.

"The State distinguishes the instant case by pointing to the evidence that there was neither a search nor a seizure. At the hearing on appellee's motion to suppress, no evidence was tendered by appellee. Only one witness testified for the State as to the circumstances under which the evidence came into the possession of the State. Deputy Calhoun testified that he received a call from Captain McBride stating that Mrs. Dees, appellee's wife, had some stolen property she was going to turn over to the police. The two officers then met and proceeded to the appellee's residence. They were met at the door by Mrs. Dees who proceeded to give them some items that she identified to be stolen property. She then led them through various rooms and she turned the items over to the officers piece by piece. They did not search for there was no need to in the fact of the wife's willingness to produce the items. The record is totally devoid of any evidence that the officers conducted a search or seized any property. To the contrary, appellee's wife voluntarily gave the stolen items to them. It is true that the officers obtained her signature on a consent to search form, but the fact is that they conducted no search pursuant to the consent form.

"Nor was there a seizure within the meaning of the constitution. To seize means `to take possession of forcibly, to grasp, to snatch, or to put in possession.' Hardie v. State, 140 Tex.Cr.R. 368, 144 S.W.2d 571. In People v. Alvarez, 236 Cal. App.2d 106, 45 Cal. Rptr. 721 (Cal. 1965), the court held that where an officer was invited into a home and the occupant wife of the defendant voluntarily gave and permitted him to remove stolen property, such property was admissible in evidence. In those circumstances, the court held that there was neither a search nor a seizure. State v. Ashby, 245 So.2d 225 (Fla. 1971).

"We think there is a significant distinction between the case at bar wherein all of the evidence reveals there was no search and no seizure and the Blakely case relied upon by appellee wherein the evidence revealed that the wife asked if the officer had a search warrant and consented to the search only after he said he could go get a warrant if she did not consent. In our view, the evidence in the case at bar is as admissible as if the defendant's wife had placed the stolen items in a box and carried them on down to the police station."[3]
In State v. Blakely, supra, the facts of which were accurately reported in the foregoing opinion of the First District, the Second District expounded upon the principles involved:
"What appellant asks us to hold is that the husband and wife relationship implies *198 authority in the wife to waive her husband's constitutional right to a search warrant. Fla. Const.D.R. § 12 (1968), F.S.A.U.S.Const. Amend. 4 § 5.
"The Florida Supreme Court specifically rejected this contention in the Carlton case, supra, and cases from other jurisdictions have held that the right to demand a serach warrant is a personal right and cannot be waived by one spouse on behalf of the other. Simmons v. State, 94 Okla. Cr. 18, 229 P.2d 615, 618 (1951); 47 Am.Jur., Searches and Seizures § 72, p. 549, notes 17 and 18 (1943). See also State v. Pina, 94 Ariz. 243, 383 P.2d 167, 169 (1963); Manning v. Commonwealth, 328 S.W.2d 421, 423 (Ky. 1959); Veal v. Commonwealth, 199 Ky. 634, 251 S.W. 648, 649 (1923); State v. Hall, 264 N.C. 559, 142 S.E.2d 177, 179 (1965). Contra, Lester v. State, 216 Tenn. 615, 393 S.W.2d 288, 290 (1965) and the cases cited therein. It should be pointed out that nearly all of the cases relied upon by the Tennessee Supreme Court in Lester, supra, hold that the authority of the spouse to waive the other spouse's right to demand a search warrant stems from joint or sole ownership or control of the premises, rather than from an implication of agency.
"Testimony at the hearing on appellee's motion to suppress indicated that appellee had rented the apartment himself and paid the rent and utilities himself. His wife was unemployed and made no contribution at all to the rent or utilities payments.
"We hold that the husband and wife relationship itself, without more, does not impute authority to one spouse to waive the other's constitutional right to demand a search warrant for the search of his premises. Since appellee's wife did not have authority to consent to the search in this case, it is unnecessary for us to decide whether such consent was coerced or whether her later written consent worked as a ratification of her prior, oral consent. The order appealed from is therefore Affirmed."[4]
In Carlton v. State, supra, the other case cited for conflict, this Court held that:
"We agree with the proposition of law insisted on by plaintiff in error to the effect that a wife as such is without any inherent authority to bind her absent husband by waiving the production of a legal search warrant for her husband's premises, or by consenting to an unauthorized search of the husband's dwelling house without his permission."[5]
In the Carlton case, this Court did hold that under the circumstances appearing in that case, the search and seizure were valid. Since, in that case, the search of the dwelling was permitted by the wife, after the husband had consented to a search by another officer on a previous day.
As the First District correctly held in the emphasized portions of its opinion in the instant case, noted above,[6] the particular facts of this case serve to distinguish it from those cases cited for conflict. Moreover, independent support for the substantive result reached by the First District is found within the rationale of the case of Coolidge v. New Hampshire,[7] decided by the Supreme Court of the United States in June, 1971. In Coolidge, faced with a highly analogous fact pattern, the Court observed:
"The first branch of the petitioner's argument is that when Mrs. Coolidge brought out the guns and clothing, and then handed them over to the police, she was acting as an `instrument' of the officials, complying with a `demand' made by them. Consequently, it is argued, *199 Coolidge was the victim of a search and seizure within the constitutional meaning of those terms. Since we cannot accept this interpretation of the facts, we need not consider the petitioner's further argument that Mrs. Coolidge could not or did not `waive' her husband's constitutional protection against unreasonable searches and seizures.

"Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence. Cf. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159. The question presented here is whether the conduct of the police officers at the Coolidge house was such as to make her actions their actions for purposes of the Fourth and Fourteenth Amendments and their attendant exclusionary rules. The test, as the petitioner's argument suggests, is whether Mrs. Coolidge, in light of all the circumstances of the case, must be regarded as having acted as an `instrument' or agent of the state when she produced her husband's belongings. Cf. United States v. Goldberg, 330 F.2d 30 (CA3), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); People v. Tarantino, 45 Cal.2d 590, 290 P.2d 505 (1955); see Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381.

"In a situation like the one before us there no doubt always exist forces pushing the spouse to cooperate with the police. Among these are the simple but often powerful convention of openness and honesty, the fear that secretive behavior will intensify suspicion, and uncertainty as to what course is most likely to be helpful to the absent spouse. But there is nothing constitutionally suspect in the existence, without more, of these incentives to full disclosure or active cooperation with the police. The exclusionary rules were fashioned `to prevent, not to repair,' and their target is official misconduct. They are `to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it.' Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677. But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals."[8]
We think the rationale of the Court in Coolidge is particularly applicable to the actions of petitioner's wife in the instant case.
Accordingly, no direct conflict having been demonstrated, the writ must be, and hereby is, discharged.
It is so ordered.
CARLTON, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 230 So.2d 698 (Fla.App.2d 1970).
[2] 111 Fla. 777, 149 So. 767 (1933).
[3] 280 So.2d at 51-52 (emphasis supplied.)
[4] 230 So.2d at 700.
[5] 149 So. at 768.
[6] See note 3, supra.
[7] 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
[8] Id. at 487-488, 91 S.Ct. at 2048 (Emphasis supplied.)