**James Henderson McCLOUDY,
Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

April 26, 1974.

Certiorari Denied by Supreme Court
July 15, 1974.

John L. Alley, Hixson, for plaintiff in error.

David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Robert J. Batson and Lawrence E. Young, Asst. Dist. Attys. Gen., Chattanooga, for defendant in error.

## OPINION

RUSSELL, Judge.

The plaintiff-in-error, James Henderson McCloudy, indigent and represented by appointed counsel, was indicted for the offense of robbery with a deadly weapon, tried before a Hamilton County jury and found guilty of simple robbery. He was sentenced to imprisonment for not less than five nor more than ten years.

Briefly stated, the evidence shows that a man approached the attendant of a Chattanooga parking lot at about 10:00 p. m., pulled something from his pocket which the attendant took to be a knife, and demanded the money in the cash drawer. The robber put the object back in his pocket but the attendant, who was afraid, gave the robber $89.62. As soon as the robber had fled, the attendant reported the incident to his manager and the police.

There are six assignments of error, but in our view, the final assignment alone is sufficient to require a new trial. Plaintiff-in-error contends that the trial court erred in responding to a question by the jury by saying that the jury could take the defendant's past record into consideration in determining the penalty.

The Bill of Exceptions shows that after deliberating for some time, the jury returned into open court and the following exchange was had:

"A Juror: If found guilty should the record be taken into consideration in determining penalty?

"The Court: In answer to the question by the jury, the Court charges further, that the jury may take into consideration any evidence that ·has been presented to it during the trial, in reaching its verdict, and if a verdict of guilty, in setting a penalty."

The "record" referred to was evidence of past crimes plaintiff-in-error had committed which was used to impeach his credibility as a witness. It seems clear that the juror was inquiring if plaintiff-in-error's past criminal record was to be taken into consideration in the fixing of his punishment, and that the trial judge's

response was in the affirmative. Of course, evidence of past crimes could only properly be considered on the issue of credibility as a witness. Peck v. State, 86 Tenn. 259, 6 S.W. 389. Hence, error was committed.

It is true that the trial judge made a statement to the jury, upon ruling on an objection to argument about prior convictions, that the jury should consider such evidence only upon the issue of credibility. The above-quoted query from the jury was made after this ruling, so the passing instruction was obviously not understood. The answer given could not help but lead the jury to believe that all evidence heard could be considered, on both the questions of guilt and punishment.

The State suggests that the defendant was not prejudiced, so the error, if any, was harmless.

If we can assume that at the time of the inquiry the fact of guilt had already been decided, we could perhaps render the error harmless by reducing the punishment to a flat five (5) years, subject to the State's acceptance of that alternative to a new trial. But we cannot say that guilt had already been decided, uninfluenced by this instruction, because the juror prefaced his query with: "If found guilty . . . " and the trial judge responded: " . . . the jury may take into consideration any evidence that has been presented to it during the trial, in reaching its verdict, and if a verdict of guilty, in setting a penalty". Our Supreme Court has recently dealt with the question of whether error in a case went only to the question of punishment. See Collins v. State, Tenn., 504 S. W.2d 753. The Court said:

> " . . . But, it was for the jury to consider all of the evidence going to the merits of the case and innocence or guilt of the accused goes to the merits of a criminal case. The Court is not permitted to poll the jurors to ascertain if incompetent evidence did, in fact, influ-

ence the decision of the jury. *The test is, could it have influenced the decision of the jury?*

> "[3] . . . [W]e, after an examination of the whole record, are unable to say that the prejudicial error went only to the question of punishment." (Emphasis added.)

We take the same position in this case. We find the instruction to be erroneous and misleading, and cannot say that its effects were limited to the amount of punishment fixed.

There remain several other assignments of error to be considered. Plaintiff-in-error contends that the trial court erred in allowing a "portion" of a police officer's file relating to a line-up identification of plaintiff-in-error to be introduced into evidence. The "portion" referred to was a photostatic copy of a police form showing the names and descriptions of participants in the line-up in which McCloudy was identified. The record also contained the name and address of the witness who picked out McCloudy positively. Defense counsel made the statement that he had no objection to the line-up itself, but felt the record was not relevant. We cannot agree, since a large part of the defense of this case was one of mistaken identity, and the line-up record shows the positive identification of the witness and the absence of any suggestiveness in the line-up. The line-up record was properly admitted into evidence by the trial court.

The next assignment of error complains of the trial court's failure to limit the State's inquiry about previous convictions of plaintiff-in-error too far removed in time or by the nature of the offense as to affect his credibility.

The general rule is that when a defendant elects to place himself on the stand as a witness, he can be treated in all respects as any other witness, and may be impeached by cross-examination as to

former convictions that involve moral turpitude. Brooks v. State, 187 Tenn. 67, 213 S.W. 207. This rule is subject to the limitation that the convictions be not too remote in time. Cooper v. State, 123 Tenn. 37, 138 S.W. 826. Defense counsel first tried to limit the scope of such anticipated cross-examination; and, failing therein, introduced the complained of prior record on direct, in an attempt to lessen its effect. Upon retrial any cross examination of the defendant, should he choose to testify, and not introduce the whole prior record himself, should be kept within the often ephemeral bounds of moral turpitude and remoteness.

■ We find no merit in plaintiff-in-error's contention that the trial court erred in instructing the jury not to consider the death penalty in this case due to a recent Supreme Court ruling. No prejudice resulted from this statement, as is evidenced by the fact that the jury found McCloudy guilty of robbery when he was charged with armed robbery.

■ Plaintiff-in-error next complains of the use of the phrase "substantial doubt" in explaining the concept of reasonable doubt to the jury. We have considered this alleged error in light of the charge as a whole and find that the jury was properly instructed.

■ The remaining assignment of error questions the legal sufficiency of the convicting evidence, but in view of our decision to order a new trial, no comment thereon need be made. Martin v. State, 1 Tenn.Cr.App. 282, 440 S.W.2d 624.

The judgment of the trial court is reversed and the case is remanded for a new trial.

O'BRIEN, J., concurs.

OLIVER, Judge (dissenting).

Indigent and represented by court-appointed counsel, upon an indictment charging armed robbery, McCloudy was convicted of robbery in the Hamilton County Criminal Court and was sentenced to imprisonment in the penitentiary for not less than five nor more than 10 years. He is now before this Court upon his appeal in the nature of a writ of error, and has assigned errors reiterating most of the matters raised in his motion for a new trial.

First, the defendant challenges the sufficiency of the evidence to warrant and support the verdict of the jury. As the Supreme Court of this State and this Court have said so often, in considering this contention we must adhere to the rule that the jury's verdict of guilt, approved by the trial judge, strips the defendant of the presumption of innocence and he stands before this Court presumed to be guilty and has the burden here of demonstrating that the evidence preponderates against the verdict and in favor of his innocence; that the verdict so approved accredits the testimony of the prosecution witnesses and establishes the State's theory of the case; that we may review the evidence only to determine whether it preponderates against the verdict, and in doing so we are required to take the verdict as having established the credibility of the State's witnesses; and that the verdict may not be overturned on the facts unless the evidence clearly preponderates against it. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Chadwick v. State, 1 Tenn.Cr.App. 72, 429 S.W.2d 135.

About 8:00 p. m. April 11, 1972, Daniel Sears, a part-time employee of a parking garage in Chattanooga, was approached by a man, identified by him as the defendant, who asked him to call a cab. After Sears collected the parking fee from the driver of a car which came through, the intruder told him to empty the cash drawer and produced what appeared to be a closed knife about four inches long and then replaced it in his pocket. Being thus frightened and fearing the man would harm him if he did not comply, Sears handed

over the contents of the cash drawer, $89.62, which the man pocketed and then fled.

Sears testified that the man was wearing a maroon corduroy sports coat, yellow shirt, dark green pants and a small hat. However, it appears that he told the parking garage manager the intruder was wearing a uniform. Sears had further described that man as a Negro about 50 years of age, five and a half feet tall and weighing about 120 pounds. From that description, the parking garage manager thought the man might be the defendant, whom he had fired a few days earlier for drinking on the job, and gave his name to Police Officer J. C. Thatcher. The same night that officer presented three or four photographs to Sears from which he identified the defendant. Sometime after 10:00 o'clock the same night Thatcher went to the defendant's home but no one came to the door. The next day, he returned and told the defendant's wife he wanted to talk to him, and the following day he picked the defendant up at his place of employment and took him to police headquarters and placed him in a line-up, where Sears again identified him.

Sears further testified that he had seen the defendant prior to the robbery, from a distance, at the garage; that at the time of the robbery the defendant appeared to be drinking and was in the well-lighted attendant's booth for five or ten minutes; and that the defendant did not take money from a strong box kept in the booth.

The defendant testified he and his wife were employed at an apartment house in the daytime while he was working for the parking garage at night; that because of his previous employment at the garage he knew about the strong box and other money kept in the booth; that he was fired at the garage when the manager came in about 4:00 o'clock one morning and found "me sitting up there nodding, which this little bottle of gin was sitting there, and him and I had some words"; that on April 11, he, accompanied by his wife, left work at the apartment house and bought a bottle of gin, and they took a taxi home; that finding his keys missing, he went to his mother's home about a block away and called the cab company; that when he returned home Mr. and Mrs. Robert Knuckles were there to repay money they owed him; that, after drinking and playing cards and records until about 10:00 o'clock, he went to bed because he had to work the next morning and was "feeling full"; that the next day he learned that a policeman had been looking for him and called the police station twice to find out the reason, but no one seemed to know; that during his second call he gave the police his name and address; that later, Officer Thatcher came to his place of employment and talked with him and he accompanied the officer to police headquarters and was placed in a line-up; that when the officer came to the apartment house where he was working, he told him "All right, sir, as soon as I change clothes." But he also said that he had no clothes at the apartment house except the uniform furnished and he received a fresh one every day, and he still had his uniform on at the line-up. He said he did not rob Sears.

Asked upon direct examination about his previous convictions, the defendant stated he was raised in a reformatory; that about 1948 he got into trouble in Missouri and served six years; that about 1966 he was convicted in Chattanooga of selling whiskey and was given a lecture and a one-year jail sentence and was placed on probation for a year. He testified under cross-examination by the State that his Missouri sentence was 10 years for rape and he served six years; that while he was a police (evidently military police) in the military service, he was convicted of assault with intent to commit bodily injury; and that in 1938, using the name McDonald, he was convicted in Michigan of joy riding in his uncle's automobile and received a prison sentence of one to two years. Defense objections were overruled.

To corroborate his alibi testimony, the defendant presented his wife and Mr. and Mrs. Knuckles. His wife said he became drunk on wine. Robert Knuckles said they drank a beer or two. Mrs. Knuckles said she did not see anyone drinking while they were there that night. Both said they left about 10:00 o'clock after the defendant lay down across the bed. After telling his attorney he was going to do so, the defendant went to see Mr. and Mrs. Knuckles the morning of the trial, asked them if they remembered being at his house and told them he was to be tried that day for robbery and needed a witness besides himself and his wife to prove where he was, and brought them to court.

Obviously the jury rejected the defendant's alibi defense. He has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

The next Assignment is that the court erred in admitting into evidence a "portion" of a police officer's file relating to a line-up identification of the defendant. This Assignment relates to introduction of a Xerox copy of a police department form showing the names and descriptions of the participants in the line-up, including the defendant, the name and address of Sears and his positive identification of the suspect who waived representation by counsel. This line-up record was introduced as an exhibit to the testimony of the investigating police officer who conducted the line-up, after he had described the procedure and the defendant and some of the other participants. Defense counsel expressly stated there was no objection to the line-up, but objected to admission of the form "on the grounds of relevancy to introduce an exhibit like that from a policeman's file; no reason for it." The court overruled the objection, and we think properly so, especially since the defendant expressly agreed that the line-up was unobjectionable.

The defendant's next complaint is that the trial court did not limit the State in in-

quiring about previous convictions too far removed in time, or by the nature of the offense, to affect his credibility. The essence of this insistence is that the State should have been limited in going into the defendant's past criminal record. As above noted, this was done on cross-examination only after the defendant had stated on direct examination that he was raised in a reformatory, served six years in prison in Missouri about 1948, and that in 1966 he was convicted in the Criminal Court of Hamilton County of selling whiskey and was given a suspended sentence of one year in jail and a lecture.

At the conclusion of the State's proof in chief, defense counsel made a motion, apart from the jury of course, "to exclude those convictions from the State's cross examination that are so far removed in time and far removed as to the nature of the offense that would be prejudicial to the defendant without really impeaching his credibility." After extended argument, the court overruled that motion, whereupon defense counsel stated: "If Your Honor is not going to limit them in advance, I feel it's absolutely necessary that I bring these things out myself on direct, as far as his convictions, rather than allow the State to do so."

In these circumstances, the defendant is manifestly impaled on his own sword, confronted as he is with the rule of law that alleged error in the admission of evidence is cured if the accused elicits and develops, or testifies on direct examination concerning, the same subject matter. Snowball v. State, Tenn.Cr.App., 477 S.W.2d 240; Lester v. State, 216 Tenn. 615, 624, 393 S.W. 2d 288; Batchelor v. State, 213 Tenn. 649, 378 S.W.2d 751. In *Lester*, our Supreme Court said:

"There are many cases in this jurisdiction and others which deal with the broad principle that if the defendant testifies in substance as to evidence which has been otherwise erroneously admitted, then his testimony clears whatever error

there might have been. See Zachary v. State, 144 Tenn. 623, 234 S.W. 758; Moon v. State, 146 Tenn. 319, 242 S.W. 39; Switzer v. State, 213 Tenn. 671, 378 S.W.2d 760; Owens v. State, 202 Tenn. 679, 308 S.W.2d 423; Cathey v. State, 191 Tenn. 617, 235 S.W.2d 601; and others. Thus, these cases clearly show that the rule is not limited to the situation where the defendant takes the stand and admits he committed the crime with which he was charged."

Having opened up the subject of his past criminal record, the defendant is in no position to complain about the State exploring it further upon cross-examination, nor about the remoteness of his prior convictions. So, we express no opinion about his remoteness claim. Where an accused discloses former convictions, cross-examination developing their full circumstances will not be held prejudicial. United States v. Graham, 325 F.2d 922 (6th Cir. 1963).

However, with respect to remoteness of prior convictions, we call attention to Cooper v. State, 123 Tenn. 37, 138 S.W. 826; Zanone v. State, 97 Tenn. 101, 36 S. W. 711, 715, 35 L.R.A. 556; United States v. Palumbo, 401 F.2d 270 (2nd Cir. 1968), cert. den. 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480; 98 C.J.S. Witnesses § 507d.

Altogether meritless is the defendant's contention that the trial court erred in instructing the jury not to consider the death penalty in this case "due to a recent Supreme Court ruling." The same contention in substance was rejected by this Court in Matthews v. State, unpublished opinion filed at Nashville November 15, 1973, cert. den. 3–4–74.

Considering the trial court's charge as a whole, as we must, Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500, there is no merit in the defendant's insistence as to the use of the words "substantial doubt" in the charge.

The Court sustains the final Assignment in this case, that the trial court erred in telling the jury the defendant's past record could be taken into consideration in fixing his sentence. The record shows that after deliberating for some time, the jury returned into open court and the following occurred:

"A JUROR: If found guilty should the record be taken into consideration in determining penalty?

THE COURT: In answer to the question by the jury, the Court charges further, that the jury may take into consideration any evidence that has been presented to it during the trial, in reaching its verdict, and if a verdict of guilty, in setting a penalty."

Thus, it is seen that, contrary to the defendant's insistence and the Court's view of the matter, the juror did not ask the court whether the defendant's prior convictions could or should be taken into consideration in assessing punishment, and the court did not so instruct the jury.

After further deliberation, the jury rendered its verdict finding the defendant guilty of robbery and fixing his maximum sentence at imprisonment in the penitentiary for 10 years, although the statutory maximum for that offense is 15 years (T. C.A. § 39–3901). Manifestly, the jury could not have been corruptly influenced by any consideration of McCloudy's possibility for parole.

While proof of other independent crimes not relevant to any issue on trial is admissible, a defendant who testifies is subject to cross-examination like any other witness, and for the purpose of affecting his credibility he may be asked as to specific acts which involve moral turpitude or any other misconduct which tends to show his lack of veracity or his untrustworthiness. State v. Fowler, 213 Tenn. 239, 373 S.W.2d 460; Brooks v. State, 187 Tenn. 67, 213 S. W.2d 7; Johnson v. State, 3 Tenn.Cr.App. 17, 456 S.W.2d 864, cert. den. 400 U.S. 997, 91 S.Ct. 474, 27 L.Ed.2d 447.

The law has long been settled in this State that evidence introduced to impeach a defendant who has taken the stand in his own behalf in a criminal case cannot be used as substantive proof or for any other purpose. And the jury should be instructed to consider impeaching testimony as affecting only the credibility of the defendant as a witness. Hill v. State, 91 Tenn. 521, 19 S.W. 674; Morgan v. State, 86 Tenn. 472, 7 S.W. 456; Peck v. State, 86 Tenn. 259, 6 S.W. 389. Indeed, the Legislature of this State has specifically provided that conviction of any number of infamous crimes may only be used to reflect upon the credibility of the defendant as a witness. T.C.A. § 40–2712.

In his charge to the jury the trial judge made no mention of the evidence concerning the defendant's previous convictions. But, in response to defense counsel's objection to the Assistant District Attorney General's reference in argument to the defendant's prior convictions, the trial court ruled in the presence of the jury that those past convictions could be considered only upon the question of his credibility. Having thus instructed the jury during the argument, the presumption is that the jury did not disregard that instruction. Howard v. State, Tenn.Cr.App., 501 S.W.2d 573; Klaver v. State, Tenn.Cr.App., 503 S.W.2d 946; O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759. There is nothing in this record even suggesting that the jury disobeyed that instruction.

Furthermore, this case was tried on May 8, 1973. Chapter 163 of the Acts of 1973, amending T.C.A. § 40–2707, became effective on May 4, 1973. Under that Act it was the duty of the trial judge to charge the jury the provisions thereof, and also the provisions of T.C.A. § 40–3612 ("Eligibility for parole"), T.C.A. § 40–3613 ("Power to parole"), T.C.A. § 41–332 ("Good behavior allowance"), and T.C.A. § 41–334 ("Honor grade—Time allowance"), "whenever applicable." Incontestably, then, when the juror asked the quoted question, the trial judge would have committed no error if he had responded by complying with the Legislative mandate expressed by Chapter 163 of the Acts of 1973 then in effect.

So, in any view, in my opinion the defendant's constitutional rights were not trenched upon and he was not prejudiced in any way by the above-quoted colloquy between the juror and the court. The judgment of the trial court should be affirmed.

Collins v. State, Tenn., 504 S.W.2d 753, cited by the Court, has no application in this case, because that case involved no question of jury consideration of the defendant's possibilities for parole. But *Collins* does reaffirm the settled law that an appellate court can reduce the punishment fixed by the jury only when the court finds it necessary to reduce a conviction to a lower degree or grade.

If a reviewing court could arbitrarily reduce any legal jury-fixed punishment considered excessive according to its notion of what is right, without reducing the offense to a lower grade or degree, "there would scarcely be any defensible reason for vesting the jury with the responsibility of assessing punishment." Collins v. State, supra. The whole jury system in criminal cases would be subverted and nullified by such a practice.